UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ILDAR GIMADIEV,

                              Plaintiff,

          -against-                              Civil Action No.
                                                        20-cv-4248 (Block, J.) (Mann, M.J.)

ALEX M. AZAR, II, Secretary,
United States Department of Health
and Human Services, *et al*.,

                              Defendants.

-----------------------------------------------------------x


# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER


                                                    SETH D. DUCHARME
                                                    Acting United States Attorney
                                                    Eastern District of New York
                                                    271-A Cadman Plaza East, 7th Floor
                                                    Brooklyn, New York 11201

                                                    September 14, 2020


Joseph A. Marutollo
Paulina Stamatelos
Assistant United States Attorneys
(Of Counsel)

PRELIMINARY OF STATEMENT ................................................................................................1

BACKGROUND ............................................................................................................................2

        A.      CDC's Efforts to Combat the Spread of Rabies in the United States ......................2

        B.      Pertinent Legal Regulations and Guidance ..............................................................3

        C.      Factual Background .................................................................................................4

        D.      Procedural Background ............................................................................................8

STANDARD OF REVIEW .............................................................................................................8

ARGUMENT .................................................................................................................................10

        A.      Plaintiff's Motion is Procedurally Improper Because it Seeks the Equivalent of a Final Judgment on the Merits .................................................................................10

        B.      Plaintiff Does Not Satisfy the Requirements for Preliminary Relief ......................11

                1.      Plaintiff Fails to Demonstrate A Substantial Likelihood of Success on the Merits .........................................................................................................11

                2.      Plaintiff Has Not Shown Irreparable Harm ...............................................14

                3.      The Balance of Interests and Public Interest Favors Respondent ..........................................................................................................15

CONCLUSION ..............................................................................................................................17

## PRELIMINARY STATEMENT

On September 8, 2020, Plaintiff Ildar Gimadiev sought to import eleven dogs lacking proof of being adequately vaccinated against rabies—including two dogs that were illegally smuggled in a concealed luggage compartment—into the United States from Russia. Upon Plaintiff's arrival at John F. Kennedy International Airport ("JFK"), the Center for Disease Control and Prevention ("CDC") properly denied entry of these dogs, as they did not meet CDC requirements for proof of having been vaccinated for rabies. While the dogs currently remain at JFK, they are scheduled to be returned home safely to Russia on or about September 17, 2020.

In this action, which was filed three days ago, Plaintiff seeks judicial review under the Administrative Procedure Act, 5 U.S. § 704 ("APA") (Compl. ¶ 4) of CDC's decision to deny entry of the eleven dogs. Plaintiff also filed, on the same date, a request for emergency injunctive relief: namely, a motion for a temporary restraining order ("TRO").[1] Plaintiff seeks to enjoin the Government from enforcing 42 C.F.R. § 71.51 and from returning the eleven dogs to Russia. Plaintiff's request for emergency relief should be swiftly rejected.

As demonstrated below, Plaintiff fails to show a likelihood of success on the merits of his claims or that he is likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff has also not demonstrated that the public interest or the balance of the equities favor a preliminary injunction. In short, Plaintiff asks the Court to second-guess the experts at the CDC—during an ongoing and uncertain public health crisis—and immediately release eleven inadequately vaccinated dogs into the general public.

---

[1] Plaintiff appears to interchangeably refer to a TRO and a preliminary injunction in his motion papers. In the event that the Court deems Plaintiff's application as one for a preliminary injunction, the Government respectfully reserves its right to formally respond to such a motion and/or supplement the current brief.

## BACKGROUND

### A. CDC's Efforts to Combat the Spread of Rabies in the United States

Rabies is nearly 100 percent fatal in both humans and animals after clinical signs appear. *See* Declaration of Dr. Emily Pieracci ("Dr. Pieracci Decl.") ¶ 6. Globally, rabies kills more than 59,000 people a year and can spread to people and pets if they are bitten or scratched by a rabid animal. *See id.*

While rabies from bats and wildlife (e.g. raccoons, skunks) continues to circulate in the United States, the country has effectively been free of canine rabies virus variant (CRVV) (i.e., rabies circulating between dogs) since 2007. *See* Pieracci EG, Pearson CM, Wallace RM, et al. VITAL SIGNS: TRENDS IN HUMAN RABIES DEATHS AND EXPOSURES—UNITED STATES, 1938–2018. 68 MMWR 524-528 (June 14, 2019). CDC estimates that the elimination of CRVV in the United States through canine rabies vaccination resulted in a tenfold decrease in human rabies cases reported from 1938 through 2018. *See id.* Even one importation of a rabid dog with CRVV threatens to reintroduce this rabies variant into the United States, which required millions of dollars and decades of work to eliminate. *See* Dr. Pieracci Decl. ¶ 7.

Approximately, 100,000 dogs enter the United States every year from high-risk rabies countries and only a small portion (approximately 200 in any given year) are denied entry based on inadequate paperwork or for failure to comply with pertinent laws or regulations. *See* Dr. Pieracci Decl. ¶ 8. In the last five years, there have been only three rabid dog imports into the United States, all from dogs arriving from high-risk rabies countries (such as the Russian Federation) and all with falsified rabies vaccination certificates. *Id.* ¶ 9. In addition to the human health risk, responding to cases of imported rabies involves a significant commitment of agency time and resources. *Id.* ¶ 10.

### B. Pertinent Legal Regulations and Guidance

CDC's dog import regulations are enacted under the authority of Section 361 of the Public Health Service Act, 42 U.S.C. § 264, which authorizes the Secretary of Health and Human Services to make and enforce regulations necessary to prevent the introduction, transmission, and spread of communicable diseases into the United States and from one U.S. state or territory into another. CDC regulations governing the import of dogs may be found at 42 C.F.R. 71.51. *See* Dr. Pieracci Decl. ¶ 11. These regulations require that all dogs appear healthy to enter the United States. Furthermore, depending upon what country the dogs are coming from, the CDC requires that the dog be accompanied by a valid rabies vaccination certificate. *Id.* ¶ 12.

All dogs arriving from the high-risk countries (such as the Russian Federation) must have a valid rabies certificate showing they are vaccinated for rabies and fully immunized. *See* Dr. Pieracci Decl. ¶ 13. It takes 28 days for the rabies vaccine to fully immunize and protect the dog. *Id.* All documents must be complete and accurate at the time of arrival. *Id.*

The CDC New York Quarantine Station ("NYQS") collaborates with U.S. Customs and Border Protection ("CBP") in reviewing documents of dogs arriving as baggage (checked and hand-carried) at JFK. *See* Dr. Pieracci Decl. ¶ 14. In that vein, CDC has published a Federal Register Notice, styled, *Guidance Regarding Agency Interpretation of "Rabies-Free" as It Relates to the Importation of Dogs Into the United States*, 84 Fed Reg. 724-03, which provides additional advice for dog owners and importers who seek to admit a dog into the United States regarding CDC's rabies vaccination requirements.[2]

---

[2] *See* https://www.federalregister.gov/documents/2019/01/31/2019-00506/guidance-regarding-agency-interpretation-of-rabies-free-as-it-relates-to-the-importation-of-dogs.

### C. Factual Background

On September 8, 2020, the CBP alerted the CDC NYQS that a single passenger, Plaintiff, had declared nine dogs arriving on Aeroflot Airlines flight 102 from the Russian Federation. *See* Dr. Pieracci Decl. ¶ 15. Of the nine dogs declared by the passenger, five of the dogs were larger breeds brought in hard-sided carriers as checked baggage, two were small breeds brought in hard-side carriers as checked baggage, and two of the dogs were small breeds hand-carried in a single, soft-sided carrier. *Id.*

Plaintiff had previously attempted to import a dog into the United States from the Russian Federation on July 28, 2020, when he sought to import a live dog as baggage through JFK Airport. *See* Dr. Pieracci Decl. ¶ 17. Upon information and belief, Plaintiff imported the dog on behalf of a buyer in the United States identified as Ms. Rose Ann Flagiello. *Id.* The dog was denied entry based on missing veterinary information on the rabies vaccination certificate. *Id.* An appeal of this denial decision was submitted by both Plaintiff and Ms. Flagiello. CDC denied the appeal, and the dog was returned to Russia. *Id.* At that time, CDC advised Plaintiff to ensure that dogs imported from high-risk countries (such as the Russian Federation) arrive with valid rabies vaccination certificates that are in English or accompanied by a certified English translation. *Id.* ¶ 18. CDC further advised Plaintiff that any future imports of dogs into the United States that did not comply with CDC regulations would be denied entry and returned to the country of origin at the importer's expense. *See id.*

CBP requested that Plaintiff produce documentation for the nine declared dogs upon his arrival at JFK on September 8, 2020. *See* Dr. Pieracci Decl. ¶ 19. A CDC Quarantine Public Health Officer ("QPHO") reviewed these documents remotely. Upon review of the documents, the CDC QPHO determined that the Rabies Vaccination Certificates may have been fraudulent

based upon inconsistencies in the documents and requested further consultation with a CDC Veterinary Medical Officer. *Id.* ¶ 21. Dr. Emily Pieracci— the Veterinary Medical Officer in the Division of Global Migration & Quarantine ("DGMQ") at CDC—also reviewed these documents and raised a similar suspicion that the documents may have been falsified based on inconsistent signatures and dates of supposed rabies vaccination. *Id.* ¶ 20. The NYQS and CBP requested that the air carrier, Aeroflot Russian Airlines, have the baggage post-entered (i.e., amend the air manifest to declare the items as cargo) and transferred to the in-bond kennel facility ("the ARK"[3]) at JFK, for further evaluation of the documentation. *Id.* ¶ 22.

Upon information and belief, while unloading the two small dogs from the soft-sided carrier, the ARK-employed animal handler noticed the bag was still heavy after removing the two dogs. *See* Dr. Pieracci Decl. ¶ 23. Upon further assessment, two additional live dogs were discovered. *Id.* Upon information and belief, the two additional dogs were not declared to CBP and arrived with no documentation. *Id.* ¶ 24. Aeroflot Russian Airlines was notified of the additional dogs and confirmed that Plaintiff had only declared nine dogs to the airline. *Id.* A separate post-entry was requested for the additional undeclared dogs. *Id.*

The CDC NYQS denied entry to all 11 dogs pursuant to 42 C.F.R. § 71.51. *See* Dr. Pieracci Decl. ¶ 23. On September 9, 2020, the CDC NYQS provided Plaintiff with a denial of entry letter, the CDC Disposition Form for Baggage and Cargo for the nine declared dogs, and the CDC

---

[3] The ARK is a container freight station at JFK, which is facility licensed by CBP to have custody of merchandise. *See* Pieracci Decl. ¶ 22. The ARK serves as a temporary holding location for live animals while they are being processed by CBP, the CDC, USDA, the Fish and Wildlife or other agencies. *Id.* The ARK was principally established as a "one stop shop" for handling both imported and departing livestock and horses. *Id.* The ARK also has the ability to handle other pets such as canine and feline pets as well as servicing aviary needs. *Id.* The ARK offers in-transit companion animal care, in-transit avian and small-mammal handling, equine export, and equine import quarantine. *Id.* Pets, horses, birds, and exotic animals are transported from aircraft, terminals, cargo facilities and other airport locations, to be cared for by ARK animal care and veterinary staff. *Id.*

Disposition Form for Baggage and Cargo for the two undeclared dogs. *Id.* ¶ 24. That same day, Plaintiff submitted an appeal of the denial of entry stating as grounds his belief that all the paperwork had been in order. *Id.* ¶ 25.

On September 10, 2020, CDC issued its final agency decision and denied the appeal from the initial denial of entry determination. *See* Dr. Pieracci Decl. ¶ 26. As set forth in the September 10, 2020 decision:

> CDC has reviewed the case and determined that 2 dogs were found in a hidden compartment of your carry-on animal carrier that were not declared to U.S. Customs and Border Protection.
>
> Additionally, CDC has reason to believe that documents associated with this shipment may have been falsified based on several discrepancies in paperwork. The stamp and signature of the veterinarian on the pet passport and on the rabies vaccination certificate for one dog do not match. One veterinarian with the same name has two different stamps and signatures in the documents for two of the dogs. Two different veterinarians have the same signature. Lastly, one dog has a different date of rabies vaccination on the pet passport and on the rabies vaccination certificate. Therefore, your appeal has been denied.

*See* Exhibit D; *see* Dr. Pieracci Decl. ¶¶ 26-28.

As of September 14, 2020, CDC has not granted the dogs entry into the United States and the dogs remain at the ARK at JFK. *See* Dr. Pieracci Decl. ¶ 28. The ARK is the only CBP-bonded facility in the country for housing dogs that have been denied entry into the United States. *Id.*

Upon information and belief, the ARK has limited capacity to house dogs denied entry into the United States for any extended period beyond a few days. *See* Dr. Pieracci Decl. ¶ 29. The ARK has communicated with CDC via email and phone and noted that several of the dogs have begun to show aggression toward the ARK staff. *Id.* ¶ 30. The ARK has requested the eleven dogs be promptly removed from the facility for the safety and welfare of the ARK staff. *Id.* Upon

6

information and belief, as of September 14, all 11 dogs currently held at the ARK are fit for travel on the next available flight to Russia (September 17, 2020). *Id.*

Upon information and belief, on September 13, 2020, CDC Regional Officer in Charge, Lieutenant Commander Matthew Palo, spoke with the Aeroflot Cargo Manager for JFK, Anna Sanyosan. *See* Dr. Pieracci Decl. ¶ 31. Upon information and belief, Ms. Sanyosan communicated to Mr. Palo that she had contacted the individuals listed as the "exporter" on each of the "Certificate of Veterinary Inspection and Rabies Certification" for these dogs. *Id.* Upon information and belief, and based on Ms. Sanyosan's representations, the exporters of record for the eleven dogs would be willing to accept these dogs if returned to Russia. *Id.*

Based on Dr. Pieracci's experience, she submits that these eleven dogs would be highly unlikely to be euthanized or suffer any harm if returned to the Russian Federation, as this is not common practice for any country accepting goods (live dogs) denied entry into the United States. *See* Dr. Pieracci Decl. ¶ 32. The International Pet and Animal Transportation Association works globally to assist importers with live animal shipments; indeed, should Plaintiff so desire, Plaintiff may choose to hire local animal care companies to pick the dogs up at the airport in Russia and transfer them to a safe location. *Id.* ¶ 33.

According to Dr. Pieracci, permitting the eleven dogs to remain in the United States under the terms of a confinement agreement would be inappropriate and detrimental to public health interests. *See* Dr. Pieracci Decl. ¶ 34. Per the CDC, confinement agreements have only been issued under extraordinary circumstances when dogs are unable to be returned to the country of origin due to severe medical issues or prolonged periods of unavailability between flights. *Id.*

The CDC submits that the factors necessary for a confinement agreement are not present here. *See* Dr. Pieracci Decl. ¶ 34. Upon information and belief, Plaintiff is acting only as a

7

"transporter" of these dogs (as eight of the dogs have owners other than Plaintiff—including a number who live outside the Eastern District of New York). *Id.* at ¶ 37, Exhibit A. Additionally, a confinement agreement requires that a dog be vaccinated for rabies and quarantined for 28 days within an enclosed area. *Id.* at ¶ 35. In such agreements, the dog is not permitted to leave the enclosure except for medical reasons or for brief walks on a leash. *Id.* Based on Plaintiff's apparent concealment and failure to declare two dogs upon entering the United States, CDC does not trust Plaintiff to abide by the terms of a confinement agreement. *Id.*

Moreover, confinement agreements typically require 4-6 months of follow-up by state and local health departments to ensure the dog is healthy and has not shown any signs of rabies. *See* Dr. Pieracci Decl. ¶ 35. Currently, health departments are overwhelmed with demands due to the COVID-19 pandemic[4] and do not have the resources to monitor these dogs. *Id.*

### D.     Procedural Background

Plaintiff filed this action on Friday, September 11, 2020. *See* Dkt. No. 1. On the same date, Plaintiff filed his motion for emergency relief, which he styled as an Order to Show Cause and a Proposed Temporary Restraining Order.

### STANDARD OF REVIEW

"[T]he standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases). A preliminary injunction

---

[4] The COVID-19 pandemic, caused by the novel coronavirus SARS-CoV-2, has now spread across the nation and the globe, including cases reported in all fifty states. As of the end of August, there have been nearly 25 million cases globally resulting in over 800,000 deaths; in the United States, nearly 6 million cases have been identified, with thousands of new cases being reported daily and over 180,000 total deaths. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a Public Health Emergency of International Concern. The following day, the Secretary of Health and Human Services declared COVID-19 a public health emergency. On March 11, the WHO declared COVID-19 a pandemic. Two days later, the President declared the outbreak a national emergency, and governors have now declared states of emergency in every state.

8

"is an extraordinary and drastic remedy, [and] one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quotation omitted).

Under this standard, "[i]t is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue . . . ." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010). Thus, an injunction should issue only where a plaintiff makes a "clear showing" and presents "substantial proof" that an injunction is warranted. *Mazurek*, 520 U.S. at 972. Put otherwise, Plaintiff has the burden of proving the need for injunctive relief; Respondent bears no burden to defeat the motion. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 442-43 (1974). And where, as here, "[a] plaintiff . . . seeks a preliminary injunction that will alter the status quo," the plaintiff must go beyond a showing of a mere likelihood of success but "must demonstrate a 'substantial' likelihood of success on the merits." *New York Progress*, 733 F.3d at 486 (citation omitted); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is ... to preserve the relative positions of the parties.").

An even higher standard of proof applies in this case because the temporary restraining order that Plaintiff seeks would alter, rather than maintain, the *status quo*. *See Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). In this context, the movant must show not only a likelihood of success on the merits, but a "clear" or "substantial" one. *Id*; *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010).

Lastly, a party seeking injunctive relief must also show "that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008); *Veramark Techs., Inc. v. Bouk*, 10 F. Supp. 3d 395, 400 (W.D.N.Y. 2014).

The decision whether to grant or deny a TRO or a preliminary injunction falls within the sound discretion of the district court. *See CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 140 (E.D.N.Y. 2011). However, because a preliminary injunction is "an extraordinary remedy" that may only be awarded "upon a clear showing that the plaintiff is entitled to such relief," it "is never awarded as of right." *Winter*, 555 U.S. at 22, 24.

## ARGUMENT

### A. Plaintiff's Motion is Procedurally Improper Because it Seeks the Equivalent of a Final Judgment on the Merits

Plaintiff's motion for a TRO seeks the identical relief, and the entirety of relief, as the Complaint itself seeks.[5] If the Court were to grant the preliminary injunction, there would effectively be nothing left for the Court to do. Plaintiff is thus essentially seeking summary judgment, rather than emergency provisional relief designed to preserve the status quo until the Court can fully evaluate the merits of the claims on a complete record. Courts, however, may not grant a "preliminary" injunction that effectively gives Plaintiff a final judgment on the merits. *See, e.g.*, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (inappropriate for court at the preliminary injunction stage to give a final judgment on the merits); *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) (purpose of a preliminary injunction not to give plaintiff ultimate relief it seeks). Here, the relief sought by Plaintiff is neither temporary

---

[5] *Compare* Dkt. No. 3 at 9 ("For the foregoing reasons, plaintiff respectfully moves the Court to issue a preliminary injunction against defendants preventing them from enforcing 42 C.F.R. § 71.51"), *with* Complaint, Dkt. No. 1 Prayer for Relief, at 12 "An Order enjoining and restraining the defendants from enforcing 42 C.F.R. § 7151.").

10

nor preliminary, but rather is the exact same ultimate relief they seek in their Complaint.

Accordingly, the requested preliminary injunction must be denied on these grounds alone.

**B.  Plaintiff Does Not Satisfy the Requirements for Preliminary Relief**

**1.  Plaintiff Fails to Demonstrate A Substantial Likelihood of Success on the Merits**

Likelihood of success on the merits is a threshold issue: "[W]hen a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three *Winters* elements." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation omitted). Here, the TRO should be dismissed on this ground alone.

Plaintiff's claim boils down to whether, under the APA,[6] CDC is enforcing 42 C.F.R. § 71.51 in "an arbitrary and capricious manner." Dkt. No. 3 at 9. But, as set forth in the final agency action, CDC reasonably denied entry of the eleven dogs coming from Russia, a high-risk rabies-endemic country. *See* Dr. Pieracci Decl., Exhibit D.

CDC first explained that Plaintiff hid 2 dogs in a carry-on, which had not been properly declared to CBP. *See* Exhibit D. CDC next explained that the stamp and signature of the veterinarian on the pet passport and on the rabies vaccination certificate for one dog did not match. *See id*. One veterinarian with the same name had two different stamps and signatures in the documents for two of the dogs. *Id.* Two different veterinarians had the same signature. *Id.* Additionally, one dog had a different date of rabies vaccination on the pet passport and on the rabies vaccination certificate. *Id.* CDC's decision is therefore not arbitrary and capricious.

---

[6] While the Complaint references constitutional claims, constitutional challenges to agency decisions are governed by the APA, *see* 5 U.S.C. 706(2)(B). *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Here, Plaintiffs' equal protection and due process claims are "folded into" the APA cause of action. *See Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 955 (9th Cir. 2011); *see, e.g., Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160 (D.D.C. 2017) (holding that the APA record review rule applies equally to cases involving constitutional claims as to those involving only statutory claims).

11

Plaintiff also argues that 42 C.F.R. § 71.51 is "void for vagueness" because it does not provide "a person fair notice of the conduct prescribed." But Plaintiff's conclusory argument is entirely without merit and has little chance for success.

"A law is vague when 'it fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement.'" *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015)). "[T]raditional rules for statutory interpretation" "'consistently favor[ ] that interpretation of legislation which supports its constitutionality.'" *Id.* at 1106 (citations omitted). Moreover, for "enactments with civil rather than criminal penalties," courts "express[] greater tolerance" with vagueness because "the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982); *see also Arriaga v. Mukasey*, 521 F.3d 219 (2d Cir. 2008) ("[l]aws with civil consequences receive less exacting vagueness scrutiny.").

Plaintiff claims that is it impossible to determine from 42 C.F.R. § 71.51 "what conduct creates a violation of the requirements thereof." Dkt. No. 3 at 5. But contrary to Plaintiff's assertion, § 71.51 provides a detailed list of rabies vaccination requirements for dogs. The regulation provides that a

> [v]alid rabies vaccination certificate means a certificate which was issued for a dog not less than 3 months of age at the time of vaccination and which:
> (1) Identifies a dog on the basis of breed, sex, age, color, markings, and other identifying information.
> (2) Specifies a date of rabies vaccination at least 30 days before the date of arrival of the dog at a U.S. port.
> (3) Specifies a date of expiration which is after the date of arrival of the dog at a U.S. port. If no date of expiration is specified, then the date of vaccination shall be no more than 12 months before the date of arrival at a U.S. port.
> (4) Bears the signature of a licensed veterinarian.

12

42 C.F.R. § 71.51(a).  The statute adds that "[a] valid rabies vaccination certificate is required at a U.S. port for admission of a dog" unless sufficient evidence is presented, as set forth in 42 C.F.R. § 71.51(c).  *Id.* § 71.51(c).  "Dogs and cats shall be subject to such additional requirements as may be deemed necessary by the Director or to exclusion if coming from areas which the Director has determined to have high rates of rabies."  *Id.* § 71.51(e).   Per the statute, "a dog [] excluded from the United States under the regulations in this part shall be exported or destroyed. Pending exportation, it shall be detained at the owner's expense in the custody of the U.S. Customs Service at the U.S. port."  *Id.* § 71.51(g).[7]

While the language above provides sufficient notice for a person of ordinary intelligence to have a reasonable opportunity to know what is needed for a valid rabies vaccination certificate, there is also a Federal Register notice providing even further guidance regarding CDC's interpretation on this issue.  The Federal Register notice, styled *Guidance Regarding Agency Interpretation of "Rabies-Free" as It Relates to the Importation of Dogs Into the United States*, 84 Fed. Reg. 724 (2019), provides additional detail, which Plaintiff here ignored.  While Plaintiff may prefer that Section 71.51 identify every situation where dogs may be denied entry to the United States, such an approach is neither practical nor required. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).  And having engaged in the illicit activities described above, and having been previously advised by the CDC as to the vaccination certificate requirements, Plaintiff

---

[7] Customs officers are authorized to search any person or their luggage crossing the border.  Title 19 U.S.C. § 1582 provides that all persons coming into the U.S. from foreign countries shall be liable to detention and search by authorized officers or agents.  Title 19 U.S.C. § 1496 states, "[T]he appropriate customs officer may cause an examination of the baggage of any person arriving in the United States."  Section 19 C.F.R. § 162.6 states, "[a]ll persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection and search by a Customs officer… if such action is deemed necessary or appropriate."  *Id.*

13

"cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010).

Finally, "an even stronger showing on the merits is generally needed when a litigant seeks a 'mandatory' injunction that will alter the status quo by commanding some positive act." *See Chunn v. Edge*, -- F. Supp. 2d. -- , 2020 WL 3055669, at *23 (E.D.N.Y. June 9, 2020) (citing D.*D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)). Here, Plaintiff cannot make the heightened showing on the merits, because he seeks an injunction that would "alter[ ] the status quo by commanding" numerous "positive act[s]." *D.D. ex rel. V.D.*, 465 F.3d at 510. Significantly, Plaintiff seeks an injunction that would require CDC to skip returning the eleven dogs to their home in Russia and to instead hold inadequately vaccinated dogs at a temporary care facility indefinitely. Plaintiff cannot meet this heightened standard.

For all these reasons, Plaintiff has not shown that he is likely to succeed on the merits.

## 2. Plaintiff Has Not Shown Irreparable Harm

Plaintiff cannot show irreparable harm such that a TRO should issue. To the contrary, as discussed above and more fully in the Pieracci Declaration, Plaintiff's hyperbolic assertion that he faces "the death of his dogs" (Dkt. No. 3 at 7) is not supported by any evidence in the record. There is no credible evidence put forth by the Plaintiff that the eleven dogs will be destroyed by the Russian Federation. *See* Pieracci Decl. ¶ 32. Certainly, the United States will not destroy these animals but rather seeks to return these animals to the Russian Federation on or about September 17, 2020. *Id.* ¶ 30.

Plaintiff has failed to establish irreparable harm on his constitutional claims. "To satisfy the irreparable harm requirement, [plaintiff] must demonstrate that absent [relief] [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be

14

remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quotation marks omitted). Merely showing a "possibility" of irreparable harm—as Plaintiff does so here, regarding the purported threat that the dogs will be in danger on a return flight to Russia— is insufficient. *See Winter*, 555 U.S. at 22. Indeed, in a footnote in Plaintiff's Declaration, Plaintiff admits that he personally knows of or has been involved "in at least 20 similar episodes with the CDC" (Dkt. No. 4 n. 1) but does not claim that in those "20 similar episodes with the CDC," Plaintiff faced the "death of his dogs" or destruction of animals he transported to the United States for sale to others.

Moreover, mandatory injunctions are not granted unless extreme or very serious damage will result. *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (internal citation omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Further, Plaintiff has other, alternative methods for relief: the eleven dogs can be returned to the Russian Federation whereby Plaintiff and the individuals responsible for breeding the dogs can comply with United States regulations *prior* to placing the dogs on an Aeroflot plane. Entirely missing from Plaintiff's Motion is an explanation as to why Plaintiff is not pursuing this common-sense solution. *See* Pierraci Decl. ¶ 33.

### 3. The Balance of Interests and the Public Interest Favor the Government

The balance of the equities strongly weighs in the Government's favor in its enforcement of public health laws and regulations necessary to prevent the introduction, transmission, and

15

spread of communicable diseases into the United States and from one U.S. state or territory into another. *See* 42 U.S.C. § 264; 42 C.F.R. § 71.51.

As Courts have recognized, the government has a legitimate and compelling interest in protecting public safety and enforcing its regulations. *See, e.g., Concerned Citizens of Chappaqua v. U.S. Dep't of Transp.*, 579 F. Supp. 2d 427, 432 (S.D.N.Y. 2008) (noting that "the government's action is presumed to be in the public's interest" when acting pursuant to a regulatory or statutory scheme); *Johnson v.* Barr, No. 19-CV-693-LJV, 2019 WL 6112338, at *7 (W.D.N.Y. Nov. 14, 2019) ("The government's interest in preventing crime by arrestees is both legitimate and compelling.") (quoting *United States v. Salerno*, 481 U.S. 739, 749 (1987)); *Singh v. Barr*, No. 19-CV-1208-LJV, 2019 WL 6609312, at *5 (W.D.N.Y. Dec. 3, 2019) (finding that "the government's interests in . . . protecting against a danger to the community may be served" by immigration detention).

Here, there is clearly a compelling interest in ensuring that a rabies outbreak does not occur in the United States. *See Altman v. City of High Point*, N.C., 330 F.3d 194, 205 (4th Cir. 2003) (noting that the government has a "substantial interest in protecting their citizens from all the dangers and nuisances associated with dogs" including the spread of disease and potential to "harass or attack people"). As the CDC explains, the elimination of CRVV in the United States through canine rabies vaccination resulted in a tenfold decrease in human rabies cases reported from 1938 through 2018. *See* Dr. Pieracci Decl. ¶ 7. Even one importation of a rabid dog with CRVV threatens to reintroduce this rabies variant into the United States which required millions of dollars and decades of work to eliminate. *See id.* In addition to the human health risk, responding to cases of imported rabies involves a significant commitment of agency time and resources. *See id.* ¶ 9. CDC estimates that "one recent import of a rabid dog involving no dog to

human rabies transmission cost an estimated $500,000 in public health response efforts and involved the administration of post-exposure prophylaxis to 44 people, and the animal quarantine of 25 additional dogs." *Id.*

Plaintiff self-serving assertion—that "[t]here is no evidence that the public interest will be harmed if the Court grants temporary injunctive relief" (Dkt. Nos. 3, 7) but "there is every reason to believe that the exportation of the dogs to Russia will result in their needless and wrongful suffering and death" (Dkt. Nos. 3, 8)—is entirely baseless. As set forth in the Pieracci Decl. ¶ 9, the Russian Federation is a high-risk rabies country and all dogs coming from the Russian Federation must have a valid rabies certificate (which Plaintiff did not have) showing they are vaccinated for rabies and fully immunized *before* entering the United States. Pieracci Decl. ¶ 13. The public's interest is not served by allowing Plaintiff to circumvent the existing regulations processes that are designed to protect the public from importers like the Plaintiff who routinely do not comply with 42 C.F.R. § 71.51. *Id.* ¶¶ 16-17 (summarizing Plaintiff's July 2020 attempt to import a live dog as baggage through JFK airport again without proper rabies vaccination certificates). Instead, granting the TRO would serve to reward Plaintiff with preferential treatment—despite Plaintiff's pattern of seeking to import dogs from the Russian Federation without securing valid rabies vaccination certificates prior to entering the United States, by forcing the Government to assume the custody and care of potentially dangerous, unvaccinated dogs during an international pandemic.

Plaintiff has not shown that the balance of hardships and public interest tips in his favor. Accordingly, the Court should not issue a TRO.

## CONCLUSION

For all of the foregoing reasons, Plaintiff has failed to establishing entitlement to

mandatory injunctive relief, and his Motion for a Temporary Restraining Order should be denied.

Dated: Brooklyn, New York  
       September 14, 2020

SETH DuCHARME  
Acting United States Attorney  
Eastern District of New York  
271-A Cadman Plaza East, 7th Fl.  
Brooklyn, New York 11201

By:     /s/  
Joseph Marutollo  
Paulina Stamatelos  
Assistant United States Attorney  
(718) 254-6288  
Joseph.marutollo@usdoj.gov  
Pauline.stamatelos@usdoj.gov