UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILDAR GIMADIEV | : CIVIL ACTION |
| | : NO. |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ALEX M. AZAR, II, Secretary, United States Department of Health and Human Services; ROBERT R. REDFIELD, MD, Director, Centers For Disease, Control and Prevention; MARTIN S. CETRON, MD, Director, Division of Global Migration and Quarantine, National Center for Emerging and Zoonotic Infectious Diseases, Centers for Disease Control and Prevention; CLIVE M. BROWN, MBBS, MPH, MSc, DTM&H (London), Chief, Quarantine and Border Health Services Branch, Division of Global Migration and Quarantine, National Center for Emerging and Zoonotic Infectious Diseases, Centers for Disease Control and Prevention; STEPHANIE MICHEL, Quarantine Officer, Quarantine and Border Health Services Branch, Division of Global Migration and Quarantine, National Center for Emerging And Zoonotic Infectious Diseases, Centers for Disease Control and Prevention, and U.S. CUSTOMS AND BORDER PROTECTION, | : |
| Defendants. | : SEPTEMBER 17, 2020 |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

| | |
|---|---|
| Richard Bruce Rosenthal<br>545 E. Jericho Turnpike<br>Huntington Station, NY 11746<br>Tel:(631) 629-8111 | Thompson Gould Page<br>1 Linden Place, Suite 108<br>Hartford, CT 06106–1748<br>Tel: (860) 895-6644 |

Attorneys for Plaintiff

1

Plaintiff, ILDAR GIMADIEV, hereby submits his reply to defendants' Opposition to Plaintiffs' Order to Show Cause and for a Temporary Restraining Order enjoining defendants from exporting plaintiff's dogs to Russia during the pendency of this action while the court determines whether the CDC's enforcement of 42 C.F.R. § 71.51 provides the necessary due process required by the Fifth Amendment.

As grounds therefore, plaintiff states as follows:

## I. PRELIMINARY STATEMENT

In 1637 French philosopher Rene Descartes propounded the concept "Cogito ergo sum": I think, therefore I am.

Now, some 383 years later, the CDC, an arm of the United States government, has updated Descartes' classic truth from a philosophical argument to "Cogito ergo Est": I think, therefore it is, a methodology to streamline its task of implementing 42 C.F.R. § 71.51.

By employing this updated concept, the CDC is able to proceed from suspicion directly to judgment, allowing a new[1] paradigm which ignores legal constraints grounded in constitutional jurisprudence such as probable cause, evidence, the burden of proof, notice, trial or impartial judges, all of which would otherwise interfere with their rush to judgment without any meaningful opportunity to be heard or appeal[2].

---

[1] Though the word new is used to describe this policy, it has been previously employed throughout the world. During the past century, various other governmental entities, most notably, the Geheime Staatspolizei (Gestapo), the Komitet Gosudarstvennoy Bezopasnosti (KGB) and the Staatssicherheitsdienst (Stasi) similarly streamlined their processes from suspicion to final solution. The appellate process implemented by the CDC similarly mirrors those of these governments, which form the basis for this proceeding.

[2] "Procedural due process is not intended to promote efficiency or accommodate all possible interests: it is intended to protect the particular interests of the person whose possessions are

2

What is particularly troubling about this case is that the US Attorney's office, the Federal Government's first line of defense for the Constitution and the Rule of Law, seemingly has no issue with the utter lack of process provided to the plaintiff and believes a Federal Judge will ignore the Supreme Court's clear requirements set down in *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893 (1976), and its many progeny of the multiple constitutional protections the plaintiff is entitled to.

The Court should note that, notwithstanding the defendants' characterizations, this proceeding is not about the sufficiency of the documents submitted by the plaintiff, as the defendants' opposition argues, but rather about the sufficiency of the process employed by the CDC and whether it passes constitutional muster.

It should be noted (and by doing so, deemed corrected) that the plaintiff's submissions incorrectly refer to the "Due Process Clause" under the 14th Amendment. As the 14th Amendment applies to the States, the correct citation should have been to the "Due Process Clause" under the 5th Amendment. The Supreme Court has interpreted the due process clauses in the Fifth and Fourteenth Amendment identically, as Justice Felix Frankfurter once explained in a concurring opinion:

> "To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection." *Malinski v. New York*, 324 U.S. 401, 415 (1945), (Frankfurter, J., concurring).

---

about to be taken. The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones. *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972)". *Fuentes v. Shevin,* 407 U.S. 67, Note 22, 92 S.Ct.1983 (1972).

3

Accordingly, plaintiff apologizes for this oversight and respectfully requests the Court deem any such references to the 14th Amendment to be references to the 5th Amendment.

The defendants argue the TRO and Preliminary Injunction requested herein should be denied because the moving papers did not lay out facts justifying the granting of a TRO and/or Preliminary Injunction in the generally accepted format, specifically labeled to respond to each of the four criteria the Court must weigh. While plaintiff's counsel acknowledges the stylistic defect in the moving papers, plaintiff nonetheless has pled facts sufficient to satisfy each of the tests. The Court should further note that part of the reason for this deficiency of form is directly attributable to the time constraints imposed by the CDC.[3]

Plaintiffs have suffered immediate and irreparable injury from the wrongful acts of defendants. Unless this Court grants the requested preliminary injunction, plaintiffs will continue to suffer the same immediate and irreparable injury.

---

[3] The entire CDC process in this matter began at approximately 7 p.m. on Tuesday 9/8/20 and the appeal was denied at approximately 10 p.m. on Thursday 9/10/20. Freed from any legal or constitutional due process constraints, the CDC's new philosophy that because they think it, it is so, allowed them to proceed at the reckless pace demonstrated herein. As the dogs were to be deported on Sunday, plaintiff's counsel had approximately 12 hours (not including any opportunity to sleep) from 11 pm Thursday until just before noon Friday to draft the papers in this matter. Plaintiff's counsel respectfully requests the Court consideration this regarding any issues of style. Counsel will respond to defendants' objections by demonstrating herein that all four factors is seeking preliminary injunctive relief were addressed in the moving papers.

> "A prior hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these rather ordinary costs cannot outweigh the constitutional right. See *Bell v. Burson*, 402 U.S. 535, 540, 91 S.Ct. 1586, 1589 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 261, 90 S.Ct.1011,1016 (1970).

It is uncontroverted that plaintiff submitted rabies vaccination certificates which contained all of the information necessary to satisfy the definition in 42 C.F.R. § 71.51(a) of a valid certificate, to wit: identification of each dog, dates of vaccination and the signature of a licensed veterinarian. What is controverted, however, is that the CDC claims, without any proof, that the validity of the certificates are somehow suspect. Plaintiff was not provided a hearing at which to challenge or rebut the CDC's unsubstantiated conclusions.

## II. ARGUMENT

"A preliminary injunction should issue upon a showing of the plaintiff's likelihood of success on the merits only where the plaintiff has shown that: (1) he is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships tips in his favor; and (4) the public interest would not be dis-served, by the issuance of a preliminary injunction. *Rex Medical v. Angiotech Pharmaceuticals, Inc.*, 754 F. Supp. 2d 616, 629 (S.D.N.Y., 2010). As set forth below, plaintiff has more than sufficient evidence to show he is likely to succeed on the merits of his claims, he will suffer irreparable harm with no adequate remedy at law if the relief is not granted, and that the balance of the hardships tips sharply in his favor with no dis-service of the public interest.

Accordingly, plaintiff asks this Court to grant his plea for preliminary injunction.

"To seek injunctive relief, a plaintiff must show that she is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will

prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000).

Plaintiff can demonstrate an injury-in-fact, as the defendants have seized plaintiff's dogs and intended to transport them out of the country today, September 17, 2020, before plaintiff commenced the instant action. If done, the dogs could likely be deemed abandoned because there are no owners or others in Russia responsible for these animals, and therefore they would face certain death. A judicial decision requiring the CDC to move forward pursuant to 42 C.F.R. § 71.51 (c)(2)(iii) whereby plaintiff would re-vaccinate the dogs and then confine them for thirty (30) days would prevent the imminent injury to plaintiff and avoid the necessity of reaching the constitutional issues.

### A.     Plaintiff is Likely To Succeed on the Merits

A party is entitled to a preliminary injunction if it makes a preliminary showing it is likely to succeed on the merits or that "sufficiently serious questions going to the merits make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *AIM Intern. Trading, LLC* v. *Valcucine SpA.*, 188 F.Supp.2d 384, 387 (S.D.N.Y. 2002).  Defendants' failure to provide even a modicum of due process, initially its failure to inform plaintiff of any clear basis for its denial of entry so plaintiff could appeal such decision, coupled with no opportunity for plaintiff to be heard on these objections, more than meets this standard that he was deprived of due process and will likely succeed on his due process deprivation claim.

Under the Fifth Amendment, no state may "nor shall any person be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V . Plaintiff has been deprived of his personal property, namely his animals and those of others for whom he is responsible, by the CDC without due process, or any process. Plaintiff was given no notice before the deprivation, and no opportunity to be heard in a meaningful and timely manner before or after the deprivation. This behavior on the part of defendants clearly violates the due process clauses contained in the Fourth and Fifth Amendments.

**Plaintiff Has a Protected Property Interest in the Dogs at Issue**

To prevail on a procedural due process claim, a Plaintiff must demonstrate: (1) that he possessed a protected property interest; and (2) that he was deprived of that interest without due process. *McMenemy v. City of Rochester,* 241 F.3d 279, 285-286 (2d Cir.2001); *Ramapo Homeowners' Association v. New York State Office of Mental Retardation and Developmental Disabilities,* 180 F.Supp.2d 519, 526 (S.D.N.Y. 2002) (citing *West Farms Assocs. v. State Traffic Comm'n,* 951 F.2d 469, 472 (2d Cir.1991), *cert denied,* 503 U.S. 985, 112 S.Ct. 1671 (1992)).

Property interests are generally derived from state law, *Id.* and personal property, such as an animal, is undoubtedly a protected property interest under New York Law. See e.g., *Yeomans v. Wallace,* 291 F.Supp.2d 70, 74 (D.Conn. 2003), *Krimstock v. Kelly,* 306 F.3d 40, 51 (2d Cir. 2002), *cert. denied,* 123 S.Ct. 2640, 156 L.Ed.2d 675 (2003) *Van Patten v. City of Binghamton,* 137 F.Supp.2d 98, 104 (N.D.N.Y. 2001) (finding that under New York law, a dog is property protected by Due Process Clause).

7

This and other courts have repeatedly held that the deprivation of real or personal property involves substantial due process interests. *Krimstock,* 306 F.3d 40, 51 (2002); See also *U.S. v. James Daniel Good Real Property,* 510 U.S. 43, 53-54, 114 S.Ct. 492, 501 (1993) (finding that "Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance"); *Connecticut v. Doehr,* 501 U.S. 1, 11, 111 S.Ct. 2105, 2113 (1991) ("[T]he property interests that attachment affects are significant."); *Fuentes v. Shevin,* 407 U.S. 67, 96-97, 92 S.Ct. 1983, 2002 (1972) (holding that loss of household furniture and appliances warrants a pre-deprivation hearing).

**Plaintiff Was Deprived of His Property**

Plaintiff has clearly been deprived of these animals since September 8, 2020. However, "[e]ven a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' under the terms of the Fourteenth Amendment." *Webster v. Chevalier,* 834 F.Supp. 628, 631 (W.D.N.Y. 1993). Deprivation of one's personal property by a state actor without notice or due process clearly violates the Constitution. *Yeomans v. Wallace*, 291 F.Supp.2d 70, 74 (D.Conn. 2003).

**Plaintiff was not Afforded Due Process**

Once a plaintiff demonstrates he has a protected property interest, the Court must next determine to what amount of legal process he is entitled. "In determining what process is due, a court must balance three factors: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;' and (3) 'the Government's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' *McMenemy v. City of Rochester*, 241 F.3d 279, 288 (2d Cir. 2001) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); See also *Van Patten v. City of Binghamton,* 137 F.Supp.2d 98, 104 (N.D.N.Y. 2001).

While there is no definitive list of the "required procedures" that due process requires, The Honorable Judge Henry Friendly, in an article entitled "Some Kind Of Hearing" (attached hereto as Exhibit 1) generated a list that remains highly influential, as to both content and relative priority:

1. An unbiased tribunal.
2. Notice of the proposed action and the grounds asserted for it.
3. Opportunity to present reasons why the proposed action should not be taken.
4. The right to present evidence, including the right to call witnesses.
5. The right to know opposing evidence.
6. The right to cross-examine adverse witnesses.
7. A decision based exclusively on the evidence presented.
8. Opportunity to be represented by counsel.
9. Requirement that the tribunal prepare a record of the evidence presented.
10. Requirement that the tribunal prepare written findings of fact and reasons for its decision.

In the instant matter, the plaintiff was afforded NONE of these procedural due process protections. Thus, to the extent the US attorney suggests plaintiff seeks the Court to "second-guess" the experts at the CDC, he is correct. (Doc. No. 8, p.3 ) In so

far that this matter is solely about due process and the CDC's failure to provide any, plaintiff surely believes the expertise of a federal judge with regards to interpreting what the Constitution mandates, most assuredly trumps that of a veterinarian and a quarantine officer.

This is not a list of procedures which are required to prove due process, but rather a list of the kinds of procedures that might be claimed in a "due process" argument, roughly in the order of their perceived importance.

Typically, prior notice and a hearing are central components of a procedural due process property deprivation. *Harvey v. Morabito,* NO. CIV.9:99CV1913HGM/GL, 2003 WL 21402561, *7 (N.D.N.Y. Jun 17, 2003) (citing *James Daniel Good Real Property,* 510 U.S. at 53, 114 S.Ct. at 500). This is especially true where the deprivation is pursuant to an established regulatory scheme as opposed to the actions of an unregulated individual. *Id.* (citing *Alexander v. Cortes,* 140 F.3d 406, 411 (2d Cir.1998). However, exceptions to the pre-deprivation notice and hearing requirement are endured only in " 'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' " *Id.* (citing *James Daniel Good Real Property,* 510 U.S. at 53, 114 S.Ct. at 500).

Even assuming the case at bar does present such an extraordinary situation to give rise to an exception to the pre-deprivation notice requirement, there are no governmental interests at stake that would justify not providing such hearing *after* the animals have already been seized. Plaintiff was given absolutely no right to be heard, either before, or more notably, after the animals were taken. A constitutional right to be heard "is a basic aspect of the duty of government to follow a fair process of

10

decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment--to minimize substantively unfair or mistaken deprivations of property." *Fuentes,* 407 U.S. at 80-81, 92 S.Ct. at 1994. Plaintiff has had none. The CDC acted unilaterally and without any justification.

In *Ortiz v. Regan,* 980 F.2d 138, 139 (2d Cir. 1992), the Second Circuit found the plaintiff's procedural due process rights had been violated because "she got virtually no process, and the process she did get was ... a run-around." *Id.* The situation here is even more egregious.

Situations such as the one at bar are precisely what the Supreme Court was referring to in *Fuentes* and *Ortiz.* The CDC seized the animals in an arbitrary manner, resulting in "substantively unfair or mistaken" deprivation of property. After this occurred, there was no forum in which to challenge the defendants' actions. There has clearly been a violation of due process. This court should prevent this substantially unfair and mistaken deprivation from continuing by granting the requested preliminary relief.

Finally, defendants have not, and cannot, articulate a legitimate factual basis (as opposed to speculation, suspicion and conjecture of possible fraud) for rejecting the facially valid rabies certificates sufficient to curtail the plaintiff's due process rights. There are less invasive manners specifically set forth in 42 C.F.R. § 71.51(c)(2)(iii) to assure the dogs do not present a credible threat of being rabid without resorting to unconstitutional seizure without any due process protections. It should be noted there was no allegation the dogs were infected with rabies, were sick, nor was any indication

11

they may have been exposed to rabies, but rather the CDC merely had suspicions of possible fraud, based upon their gut feelings.

With regards to the defendants' raising unsupported allegations of suspicions of possible fraud concerning the rabies certificates as a basis to deny issuing a TRO or preliminary injunction, Hon. Vanessa L. Bryant, writing in *CountryFare, LLC v. Lucerne Farms*, 2011 WL 2222315 6/7/2011 D. Conn, noted:

> To raise a successful defense of fraud under 15 U.S.C. § 1115(b)(1) the allegedly fraudulent statements must show a deliberate attempt to mislead the Patent and Trademark Office and may not be the product of an error or inadvertence. The fraud must be proven by clear and convincing evidence. Courts and the Trademark Board have held that this disfavored defense must be proven to the "hilt" by the party alleging the fraud. *E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, 513 (S.D.N.Y., 2008) (internal citations and quotation marks omitted).

Though *E. Gluck* is a trademark case, the Court's adoption of the Rule in *Country Fare* is equally valid in assessing the government's attempt to raise suspicions of possible fraud herein, and absent these suspicions being proven to the "hilt" by the defendants, this Court should not entertain such speculation.

It should also be noted if the defendants truly believe their suspicions are valid and the dogs have not been vaccinated, then this question could easily be laid to rest by conducting a titer test on the dogs to determine whether they have the antibodies for the rabies vaccine. Their failure and refusal to do so and their unwillingness to allow it to be done must be construed as demonstrating that their issue is not preventing rabies or insuring inoculation of dogs entering the USA (which is the governmental purpose for which they are tasked under 42 C.F.R. § 71.51) but rather an arbitrary and capricious intent to demand that all paperwork satisfy their irrational suspicions. This is the very

purpose for which due process requires an opportunity to be heard before a neutral magistrate.

Plaintiff has adequately demonstrated he is more than likely to succeed on the merits that his due process rights have been violated or, at the very least, there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *AIM Intern. Trading LLC,* 188 F.Supp.2d at 387. Accordingly, this court should grant Plaintiff's motion for a preliminary injunction.

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM AND THERE IS NO ADEUATE REMEDY AT LAW

A showing of probable irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir.1983)). Accordingly, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *AIM Intern. Trading LLC v. Valcucine SpA.,* 188 F.Supp.2d 384, 387 (S.D.N.Y. 2002).

Deprivation of plaintiff's property without due process constitutes irreparable harm. Courts have found per se irreparable harm where the moving party alleges a constitutional deprivation for which monetary compensation is not an adequate remedy. *Cayuga Indian Nation of New York v. Village of Union Springs,* 293 F.Supp.2d 183, 196 (N.D.N.Y. 2003); See also *Albro v. Onondaga County, N.Y.,* 627 F.Supp. 1280, 1287 (N.D.N.Y.1986), finding irreparable harm where plaintiff alleged due process violations regarding overcrowding at county jail ("Plaintiffs' allegations that they have suffered and will continue to suffer constitutional deprivations from the conditions resulting from the

13

overcrowding at the PSB jail satisfy the requirement of irreparable harm; deprivation of constitutional rights constitutes irreparable harm per se"). As in *Albro,* plaintiff has suffered and will continue to suffer unconstitutional deprivations which monetary damages cannot adequately address, and there is no harm more immediate nor irreparable then the death of plaintiff's dogs, whether by shipping them back to Russia where there is nobody to claim or care for them or at the hands of the CDC, which is entitled to effect the dogs' destruction without notice or oversight to the contrary because plaintiff did not send the dogs back to Russia as ordered. In an only moderately less fulsome abridgment, they could also adopt the plaintiff's animals to other, unaware adopters, and this would spare the animal from death but would just as completely terminate any hope of the plaintiff in recovering the dogs.

The foreseeable consequences of defendants' continuing misconduct are severe and immediate. *AIM Intern. Trading LLC,* 188 F.Supp.2d at 387. This Court must act to protect plaintiffs' constitutional rights. Absent a preliminary injunction, plaintiffs will suffer an incalculable loss of these rights which cannot be addressed by monetary damages.

### C. THE BALANCE OF HARDSHIPS TIPS DECIDELY TOWARD PLAINTIFF

Plaintiff is being told, in a legal sense, to give up his right to participate in the lawful activity of property ownership. It is worth noting, however, that in his mind and in the mind of a great many other similarly situated property owners, he is being told to give up his family members[1]. Animals are legally property; this is agreed upon. But these are not mere chattel; these are her companions who were stripped away from him

---

[1] 2 of the dogs are the personal dogs of the plaintiff

in traumatic fashion by callous individuals, and with no means for him to ever see them again. Plaintiff demands only a *hearing*, the right to an opportunity to have a neutral magistrate determine the fairness of such deprivation. He does not challenge the CDC's underlying right to deny entry to animals that pose a credible threat of having rabies; only that they must *prove* they have this right in a fair hearing. In this situation, the hardships overwhelmingly tip towards plaintiff. Plaintiff seeks only the opportunity to be heard, but he, and the owners of the nine other dogs like him, will never be heard unless this court grants a preliminary injunction until such time as the Court decides the matter case.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully moves the Court to issue a preliminary injunction against defendants preventing them from enforcing 42 C.F.R. § 71.51in an arbitrary and capricious manner, from enforcing the Denial of Entry issued by defendants Michel & Brown, barring the U.S. Customs Service from exporting the eleven dogs to Russia during the pendency of this action and issuing an order requiring the defendant Cetron to authorize admission of the dogs pursuant to 42 C.F.R. § 71.51(c)(2) under the conditions set forth therefore in 42 C.F.R. § 71.51(c)(2)(iii) .

<table>
<tr><td>

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
Federal Bar No. rb1834
545 East Jericho Turnpike
Huntington Station, NY 11746
Phone: 631-629-8111
Fax: 631-961-8789
Email: richard@thedoglawyer.com

</td><td>

Respectfully submitted,

/s/ Thompson Gould Page
Federal Bar No. TP5549
Law Offices of Thompson
Gould Page, LLC
1 Linden Place, Suite 108
Hartford, CT 06106
Phone: 860-8995-6644
Fax: 860-895-6672
Email: thom@tpagelaw.com

Attorneys for Plaintiffs

</td></tr>
</table>

## **CERTIFICATION**

    This is to certify that on September 17, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System, which will send notification of such filing to the following:

                                        */s/ Thompson Gould Page*
                                        Thompson Gould Page